Ruffin, C. J.
 

 Although the form of the instrument is very strong evidence, that an absolute deed was intended as a conveyance upon a purchase, especially when supported by an answer ; yet it has been often held not to be conclusive. It cannot, indeed, be met by parol evidence, merely, of an, agreement at the time for a mortgage. Nor can it be repelled by any evidence, which is not clear and cogent. But proof,
 
 dehors,
 
 of facts and circumstances, which, to the apprehension of men versed in business and judicial minds, are incompatible with the idea of a purchase and leave no fair doubt that a security only was in
 
 *45
 
 tended, has been deemed sufficient to let in the apparent vendor to redeem. The leading case in our Courts is that of
 
 Streator
 
 v. Jones, 3 Hawks. 423. The questions of evidence and of equity were there much discussed, and it was ruled, that the distresses of the maker of the deed, proposals for a loan, great disparity between the sum paid and the value of the estate, the possession continuing afterwards as before, an accounting between the parties as if the vendee were still acreditar, and the vendorJhad still an interest in the property, and the like, were facts constituting a body of evidence, as to the real purpose of the deed, stronger than the form of the instrument and the oath of an interested person. That case was, followed by
 
 Kimbrough
 
 v.
 
 Smith,
 
 2 Dev. Eq. 558
 
 ; Hauser
 
 v.
 
 Lash,
 
 2 Dev. Bat. Eq. 212 ;
 
 Howlet v. Thompson,
 
 1 Ired. Eq. 369 ; and several others of the same effect. For, although deeds must be presumed ta speak the truth, yet we know, that, in reality, instruments, intended to be but securities, are sometimes put into the form of absolute-conveyances, from the ignorance of the writer, the mistake-of the parties, great confidence on one side and undue advantage taken on the other of the necessities of a distressed and dependant man. Therefore, in such eases, Courts must consider the circumstances, in the hope oí discovering the true character of the tansaction; and, such circumstances as those enumerated,have been held to amount to clear and cogent proof — which is necessary — either that the agreement was for a security only, or that the-bargain was a hard and unconscientious one, and relief given accordingly.
 

 This case has every material ingredient, on which the equity was sustained in those cited, and others equally strong. The first — always deemed the most material— is a gross inadequacy of the money paid, as a price ; be-, ing just one tenth of the value. Ten times the price was. got for the mine almost immediately after the deed ; and
 
 *46
 
 therefore the value at the time may, properly, be thus estimated. It is true, the answer says that the sale to Lewis was for much more than the parties expected and more than the value. But, as the case stands, that account cannot be credited. The defendants have not examined Lewis, in support of their answer, as to his motives for buying ; nor proved by him, or any one, that the value was less than the price he gave.
 
 Indeed, the
 
 original lease fixed on the very sum, which Lewis did give, as that he should give, in case he chose to buy wdthin two years ; and the operations of the plaintiff, after the deed, were no greater annoyances to Lewis, than they had been before. Consequently, the price given by Lewis must be taken as the value; and it seems impossible, that a man, in his senses and with a free wiR, could agree
 
 to sell oat and
 
 out, for $40, property, for the sale of which he had contracted conditionally at $400, and which in three weeks was finally sold at that price to the person, who had before contracted for it. It is further admitted in the answer, that the plaintiff was in great distress for a small sum of money. The defendants say, that, for that reason, he had often offered to make a sale to them. But there is no proof of that assertion ; and there is evidence, that he wished to borrow the money' upon the security of this property. There is, indeed, no direct evidence of the negociation between the plaintiff and the defendants ; which was to themselves, and does not seem, in its particulars, to have been communicated to any person. It is true, that Willie says, Overby stated to him the terms of the contract. But he does not give them to us further than merely saying,
 
 they
 
 “were expressed
 
 in the deed
 
 which is, certainly", very unsatisfactory, and amounts only to this, that he wrote the deed, according to his understanding of the terms. He should have given us the words of the parties, so that the Court could see, whether the instrument conformed to the contract, or whether the true
 
 *47
 
 nature of the contract, in respect to the important point now investigated, was at all explained or understood by the witness. The defendants ask him no questions on that point, but leave the case upon the vague terms used by that witness. The truth, probably, is, that the witness, as a neighbor and not an adviser, was asked to write
 
 a
 
 deed for the parties, and that he did not think of enquiring, whether it was founded on an agreement for a sale, or for a security, nor they of communicating. The understanding of the matter by the witness, separated from the facts on which it was founded, is entitled to very little weight, as the instrument itself shews, that he had but a slender capacity for the task he undertook, beyond merely writing legibly. The testimony of the writer of the deed, therefore; leaves the case much as it would be without it, and upon the paper by itself. Then, it is clear, that the price or alleged price was not paid at the preparation or the execution of the deed, nor any security given for it. The defendants have given no evidence of it, and have not thought proper to examine either of the subscribing witnesses. On the contrary, it is proved that David Over-by paid it aftenvards to the constable in discharge of the executions against Blackwell and in his presence ; the latter saying at the time, that he made Overby a deed of trust for the mine, and the other not disputing it. There is also something .singular in the fact, that the deed is made to JohnS. Overby, as well as to David ; inasmuch as he does not appear to have paid any part of the $40 mentioned as the consideration, and he assigned his share to David without value, as far as is expressed in the assignment or shown by proof, and lie got no part of the price paid by Lewis, excepting that he retained out of the money received from Lewis enough to satisfy a debt in his hands, as constable, for collection. It is. under such circumstances, much more than simply a conjecture, that he became a party to the deed merely to obtain a security
 
 *48
 
 by way of indemnity from loss for indulging the plaintiff on Clark’s debt, and,: therefore, when he got payment of that debt, he gave up all claim under the deed, and assigned his naked legal title to David, in order that he might make a clear conveyance to Lewis. This is fortified by the fact, that, upon the execution of the deed by the plaintiff, John S. Overby did not discharge nor take on himself the plaintiff’s debt to Clark; but he waited until the sale of the mine to Lewis, and paid the debt out of the price — both of the defendants saying, that they had sold Blackwell’s interest to Lewis. It would seem, then, almost certain that John S. Overby was not a purchaser in this transaction ; and it follows that the other defendant also was not one.
 

 The circumstances hitherto adverted to receive great additional force from the indisputable facts, that, after the deed, the plaintiff continued in possession, taking the profits, as he had done before, and that, upon the sale to Lewis, the defendants accounted to him for the money received. The possession, it is true, was but for a short period; but it continued up to the sale to Lewis, and that alone was the reason for its termination. But the continuing in possession at all of a gold mine, after the deed, without a new contract, creates a strong presumption, that the sale was not absolute. If it had been, the vendor could not have thought of working the mine afterwards ; but he would have been stopped instantly, just as the plaintiff and the defendants all did, as soon as a real sale was made to Lewis. The other fact, that the defendants paid the plaintiff the money received from Lewis, upon the sale, puls the matter beyond doubt, if any remained. Unexplained, that act, concurring in tendency with the other circumstances, completes the evidence, so as to make it irresistible. The defendants felt the force of it, and, when they could not deny, endeavour to avoid it, by saying, that it was a gratuity. But there is not the slightest
 
 *49
 
 proof in support oF the averment. They do not show, that they accompanied the payment with any declaration of the kind, so as to afford some presumption, that the plaintiff received the money on those terms. The payment, therefore, must naturally be taken to have been made on an acknowledged right of the plaintiff to the money — agreeing with the defendant’s declaration to the witness, that the money was got for the plaintiff’s interest in the mine. And, upon the whole, the case seems a strong one for holding, upon presumptions arising from undoubted facts, that the deed was unduly obtained in this form, and declaring that it was intended as a security only. Confirming the sale, as he does, the plaintiff is entitled to the proceeds, deducting what he may owe the defendants or either of them on prior debts or for advances for him after the deed ; and it must be referred to make the usual enquiries on those points.
 

 Per Curiam.
 

 Decree accordingly.